IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GISELE NORRIS et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>AON PLC et al.,<br><br>    Defendants. | Case No. 21-cv-00932-CRB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiffs Gisele Norris and Henry Yuan have sued Defendants Aon PLC, Aon Group, Inc., and Aon Risk Services Companies, Inc. (collectively, Aon) for declaratory and injunctive relief relating to agreements they signed while employed by Aon. Norris and Yuan allege that the Restricted Stock Unit Agreements ("RSU Agreements") that they both signed, and the Confidentiality and Non-Solicitation Agreement that Yuan signed, "contain a number of void, illegal, and unenforceable provisions, including restrictive covenants that violate well-established California law." See Compl. (dkt. 1) at ¶¶ 15, 19, 27.

Norris and Yuan have moved for a preliminary injunction to prevent Aon from enforcing those provisions. See Mot. for Prelim. Injunction (dkt. 12) at 17. Aon has opposed that motion, arguing that Norris and Yuan's claims are subject to enforceable arbitration agreements. See Opp. to Mot. for Prelim. Injunction (dkt. 20) at 4–5. Aon has also moved to compel arbitration. See Mot. to Compel (dkt. 21).

The Court grants the motion to compel arbitration and denies the motion for a preliminary injunction. The Court determines that oral argument is not necessary.

## I. BACKGROUND

The Aon Defendants are corporations organized under the laws of the United Kingdom and Maryland, with their principal places of business outside California. Compl. ¶¶ 3–5. Collectively, they provide "risk management services, insurance and reinsurance brokerage, and human resource consulting and outsourcing." Id. ¶ 8. Norris and Yuan, both California residents, were employed by Aon in California. See id. ¶¶ 1–2, 7. In January 2021, they resigned and began working at Aon's competitor, Marsh USA Inc. (Marsh). Id. ¶ 20. Approximately a week later, Aon sent them letters stating Aon's intent to enforce the restrictive covenants contained in the RSU Agreements that Norris and Yuan signed while employed at Aon. Id. ¶ 21. Aon "demanded assurance from Plaintiffs that they 'have not and will not solicit, accept service[,] or perform work for Marsh or any other party with AON clients.'" Id. ¶ 22. Norris and Yuan allege that Aon has "threatened to take action to enforce the purported restrictive covenants of the RSU Agreements to try to prevent Plaintiffs from their gainful employment in California with Marsh and their right to compete lawfully against Aon for business." Id. ¶ 25.

### A. Plaintiffs' RSU Agreements and Yuan's Confidentiality and Non-Solicitation Agreement

Norris entered into two RSU Agreements with Aon, one on December 4, 2009, see 2009 RSU (dkt. 1 Ex. A), and a second on June 11, 2015, see 2015 RSU (dkt. 1 Ex. B); see Compl. ¶ 13. Yuan entered into a Confidentiality and Non-Solicitation Agreement with Aon on July 14, 2016, see 2016 Agreement (dkt. 1 Ex D); Compl. ¶ 14, and an RSU Agreement with Aon on June 7, 2020, see 2020 RSU (dkt. 1 Ex. C).

The RSU Agreements granted Norris and Yuan "restricted stock units . . . each RSU representing the right to receive a share of Aon common stock . . . to encourage the Employee to remain in the employ of [Aon], to provide the Employee with an incentive to contribute to the financial progress of the Company, and to encourage ownership of the Company's stock by the employee." See e.g., 2009 RSU at 1. Although Norris and Yuan initially alleged that they entered into the RSU Agreements as conditions of their

continued employment at Aon, see Compl. ¶¶ 13–14, they do not dispute Aon's assertion that Aon "employees are free to accept or reject such . . . RSU Agreements," such that these agreements "are not conditions of employment," see Mot. to Compel at 3; see generally Opp. to Mot. to Compel (dkt. 26).[1]

According to the Complaint, the RSU Agreements contain non-compete provisions that "purport to restrict Plaintiffs from doing business with or soliciting the customers or employees of AON for two years after Plaintiffs leave their employment with AON, even if the solicitation does not involve the use of confidential or trade secret information." Compl. ¶ 15. Norris and Yuan also allege that the RSU Agreements "purport to restrict Plaintiffs from communicating with AON's employees to discuss employment opportunities with [Marsh] or any other employer." Id. ¶ 16. Yuan's 2016 Confidentiality and Non-Solicitation Agreement contains a similar employee non-solicitation provision. See 2016 Agreement; Compl. ¶¶ 15, 18.

### B.  Arbitration Provisions

Section 10(a) of Norris's 2015 RSU Agreement and Yuan's 2020 RSU Agreement provides in relevant part:

> The Participant and the Company . . . agree that . . . all claims or disputes between or involving the Participant and Aon (including without limitation any subsidiary of the Company) (i) arising under or relating to this Agreement (including without limitation Section 9 hereof) or any Other Covenant, or (ii) involving the interpretation, applicability, enforceability or formation of this Agreement, any Other Covenant, or any portion thereof (including without limitation the agreement to arbitrate in this Section 10, and further including without limitation any claim or dispute alleging that this Agreement, any Other Covenant, or any portion thereof is a contract of adhesion, lacks consideration, is substantively or procedurally unconscionable, is void against public policy, or otherwise is void or voidable for any reason) shall be determined and resolved exclusively by arbitration in Chicago, Illinois (or such other location to which the Participant and the Company agree) before a single neutral arbitrator . . . in compliance with and as

---

[1] And, as discussed below, Norris and Yuan do not argue that the arbitration agreements in the RSU Agreements were invalid because the RSU Agreements or any portion thereof were conditions of employment. Instead, they argue only that the agreements were presented on a "take-it-or-leave-it" basis. See Part I.B.

3

further provided in Section 10.

2015 RSU at 6; 2020 RSU at 7.  Section 10(b) then clarifies:

> For avoidance of doubt, the parties hereby acknowledge and agree that the Company . . . or the Participant may assert a claim or dispute encompassed by this Section 10, and seek a remedy or relief for or associated with such claim or dispute (including without limitation emergency, injunctive or other interim relief, or final relief) only in arbitration pursuant to this Section 10, and may not pursue an action in court for or relating to any such claim, dispute, remedy or relief.

Id.

Section 11(k) provides for judicial enforcement of any arbitral decision or award in federal or state court in Chicago, Illinois:

> Venue for any arbitration proceedings instituted under this Agreement shall be exclusively in Chicago, Illinois (unless the parties otherwise agree), and the parties hereby submit and agree to the exclusive jurisdiction of the State of Illinois for the purposes of any such arbitration.  The parties also hereby submit and agree to the exclusive venue and exclusive jurisdiction of the federal and state courts in Chicago, Illinois for the purpose of any claim or action to enter judgment enforcing an arbitration decision or award (whether interim or final) rendered pursuant to Section 10 above, and for any other claim or action (if any) arising under or relating to this Agreement (whether or not such claim or action is validly asserted in light of Section 10 above), and the parties hereby agree that any such claim or action (if any) shall be brought exclusively in such federal and state courts in Chicago, Illinois. Nothing in this Section 11(k) waives or limits in any way a party's arbitration or other obligations under Section 10 above or under any other provision of this Agreement.

2015 RSU at 10; 2020 RSU at 10–11.  And Section 11(j) contains a choice-of-law provision, which states:

> The validity, interpretation, instruction, performance, enforcement and remedies of or relating to Sections 9 and 10 of this Agreement [the arbitration provisions], and the rights and obligations of the parties hereunder, shall be governed by and construed in accordance with the substantive internal laws of the State of Illinois, without regard to the conflict of law principles, rules or statutes of any jurisdiction, and subject to Section 10 above.

2015 RSU at 10; 2020 RSU at 10.

Finally, Section 10(f) states that the arbitrator has "no power to modify" these arbitration provisions, "except pursuant to Section 11(j)."  2015 RSU at 8; 2020 RSU at 8.

4

Section 11(j), in turn, provides that "[t]o the extent that . . . any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified or deleted in such manner as to afford [Aon] the fullest protection commensurate with making this Agreement." 2015 RSU at 10; 2020 RSU at 10.

Norris and Yuan generally allege that these arbitration provisions were "presented on a take-it-or-leave-it basis, as neither Norris nor Yuan were afforded any opportunity to negotiate." Opp. to Mot. to Compel at 5.

Norris's 2009 RSU Agreement and Yuan's 2016 Confidentiality and Non-Solicitation Agreement did not contain these same arbitration provisions. See 2009 RSU; 2016 Agreement. But Section 10(a) of the subsequent RSU Agreements, which incorporates the relevant arbitration provisions, is applicable to "any Other Covenant," and Section 9(d) defines "Other Covenant" to mean "any prior . . . agreement entered into by the participant . . . including without limitation any covenant contained in any Confidentiality and Non-Solicitation Agreement between the Participant and any Aon entity, and further including without limitation any covenant not to compete, to solicit, or perform services for clients, or to solicit employees." 2015 RSU at 5; 2020 RSU at 5.

## II.   LEGAL STANDARD

Under the FAA, arbitration agreements can be invalidated only "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party resisting arbitration must challenge the specific written provision stating that the dispute at issue must be resolved in arbitration. It is not enough to challenge "another provision of the contract, or . . . the contract as a whole." Rent-A-Center West, Inc. v. Jackson, 561 U.S. 63, 70 (2010). And if the challenge targets the specific agreement to arbitrate a dispute, that agreement will still be enforced unless a general principle of contract law invalidates it. 9 U.S.C. § 2; Rent-A-Center, 561 U.S. at 70.

A single transaction may involve multiple agreements to arbitrate different disputes. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995). As relevant here, section 2 of the FAA covers both (1) an agreement to arbitrate disputes about the merits of

5

1   the underlying contract (here, the RSU and confidentiality and non-solicitation
2   agreements); and (2) an agreement to arbitrate disputes about gateway issues, such as the
3   scope and validity of the first arbitration agreement. See Rent-A-Center, 561 U.S. at 68–
4   69.  This second agreement is called a delegation agreement (or delegation clause) because
5   it delegates the dispute over whether the agreement to arbitrate merits disputes is
6   enforceable (arbitrability questions) to an arbitrator.  See First Options, 514 U.S. at 942.
7   Thus, a delegation agreement is a sub-category of arbitration agreement.  Rent-A-Center,
8   561 U.S. at 70 (describing a delegation clause as an "additional, antecedent agreement the
9   party seeking arbitration asks the federal courts to enforce").  A court may conclude that
10  the parties agreed to have an arbitrator decide this arbitrability question only when there is
11  "clear and unmistakable" evidence.  First Options, 514 U.S. at 944 (quoting AT&T Techs.
12  v. Communs. Workers of Am., 475 U.S. 643, 649 (1986)).  But when that evidence exists,
13  section 2 "operates on this additional arbitration agreement just as it does on any other."
14  Rent-A-Center, 561 U.S. at 70.

15       In sum, to successfully challenge a delegation agreement, a party must challenge the
16  specific language delegating the arbitrability question to an arbitrator.  Id.  A broader
17  challenge to the arbitration clause submitting merits disputes to arbitration will not suffice.
18  Nor will a (still broader) challenge going to the merits of the underlying dispute.  Id.  If a
19  party specifically challenges the agreement delegating the arbitrability question to an
20  arbitrator, the party must also show that a general principle of contract law invalidates that
21  delegation agreement.  9 U.S.C. § 2; Rent-A-Center, 561 U.S. at 70.

## III.   DISCUSSION

23       Defendants contend that the parties are contractually bound to arbitrate because (1)
24  the RSU Agreements "fall within the ambit" of the FAA, (2) "the arbitration provisions
25  within the RSU Agreements specifically provide that gateway issues of the arbitrability of
26  Plaintiffs' claims must be decided by the arbitrator," (3) even if the Court has the authority
27  to determine the scope of the agreements to arbitrate, "the RSU Agreements' plain
28  language establishes that Plaintiffs' claims are wholly within the scope of the broad

6

1  agreements to arbitrate," and (4) California Labor Code § 925 does not excuse Plaintiffs
2  from their agreements to arbitrate.  Mot. to Compel at 6–7.

3  Norris and Yuan argue that the Court should not compel arbitration because: (1) as
4  to Norris's 2009 RSU Agreement and Yuan's 2016 Confidentiality and Non-Solicitation
5  Agreement, they did not agree to arbitrate any disputes, (2) the arbitration provisions in
6  Plaintiffs' 2015 and 2020 RSU Agreements are unenforceable on both procedural and
7  substantive unconscionability grounds, and (3) the delegation clauses are unenforceable for
8  the same reasons.  See Opp. to Mot. to Compel at 3–6.

9  Because the Court concludes that a valid, enforceable delegation agreement applies
10 to all the pertinent Agreements, the Court need not reach any other issues raised by the
11 parties.

### A.   Applicability of the Arbitration Provisions to Norris's 2009 RSU Agreement and Yuan's 2016 Confidentiality and Non-Solicitation Agreement

14 To determine whether all of Plaintiffs' claims must be arbitrated, the Court first
15 must determine whether the arbitration provisions in the 2015 and 2020 RSU Agreements
16 apply to the prior agreements at issue here.

17 They do.  Section 10(a) of the 2015 and 2020 RSU Agreements makes clear that the
18 arbitration provisions apply to "any Other Covenant," and Section 9(d) defines the phrase
19 "Other Covenant" to mean "any prior . . . agreement entered into by the participant . . .
20 including without limitation any covenant contained in any Confidentiality and Non-
21 Solicitation Agreement between the Participant and any Aon entity, and further including
22 without limitation any covenant not to compete, to solicit, or perform services for clients,
23 or to solicit employees."  2015 RSU at 5; 2020 RSU at 5.  Thus, although both Norris's
24 2009 RSU Agreement and Yuan's 2016 Confidentiality and Non-Solicitation Agreement
25 do not contain express arbitration provisions, their 2015 and 2020 RSU Agreement
26 arbitration provisions apply to those previous Agreements, which are "Other Covenants."
27 When Norris and Yuan agreed to accept Aon stock in 2015 and 2020, they did so partly in
28 exchange for agreeing to arbitrate disputes arising from those previous Agreements.

Norris and Yuan have provided no meaningful argument to the contrary. Their conclusory argument that "there is no basis for Aon to compel arbitration of any claim as to either of those [previous] agreements, by surprise bootstrapping or otherwise," see Opp. to Mot. to Compel at 3, cites no supporting authority.

Accordingly, the Court holds that the arbitration provisions apply to Norris's 2009 RSU Agreement and Yuan's 2016 Confidentiality and Non-Solicitation Agreement.

### B.   Arbitrability

Next, the Court must decide whether it may resolve gateway issues of arbitrability, or whether an arbitrator must resolve those issues. Defendants contend that the Court should grant their motion to compel arbitration because "the arbitration provisions within the RSU Agreements specifically provide that gateway issues of the arbitrability of Plaintiffs' claims must be decided by the arbitrator," so whether Plaintiffs' claims are within the scope of the agreement to arbitrate is a question for the arbitrator. See Mot. to Compel at 8. Norris and Yuan state that the delegation clause is unenforceable because (1) it does not clearly delegate arbitrability questions to an arbitrator, and (2) it is unconscionable. See Opp. to Mot. to Compel at 3.

#### 1.   Clear and Unmistakable Delegation

As discussed above, a court may conclude that the parties delegated arbitrability questions to an arbitrator only when there is "clear and unmistakable" evidence. First Options, 514 U.S. at 944 (quoting AT&T Techs., Inc. v. Communs. Workers of Am., 475 U.S. 643, 649 (1986)). Such clear and unmistakable evidence can include "a course of conduct demonstrating assent . . . or . . . an express agreement." Momot v. Mastro, 652 F.3d 982, 988 (9th Cir. 2011) (citation omitted).

Here, Norris and Yuan's assertion that the delegation clause in the Agreement is not "clear and unmistakable" is meritless. Because the delegation clause expressly provides that "all claims or disputes . . . involving the interpretation [or] enforceability . . . of this Agreement . . . or any portion thereof (including without limitation the agreement to arbitrate in this Section 10)" must be submitted to arbitration, 2015 RSU at 6; 2020 RSU at

8

7, the parties entered into an unambiguous "express agreement" to delegate arbitrability questions to an arbitrator, see Momot, 652 F.3d at 988.

Plaintiffs' argument that Section 11(k) makes any delegation unclear, see Opp. to Mot. to Compel at 6, is unpersuasive. Section 11(k) stipulates that federal and state courts in Chicago, Illinois are the proper venue and have jurisdiction to entertain "any claim or action to enter judgment enforcing an arbitration decision or award (whether interim or final) rendered pursuant to Section 10." 2015 RSU at 10; 2020 RSU at 10–11. That has nothing to do with those courts' authority to decide gateway arbitrability issues. Section 11(k) goes on to state that these courts are the proper venue and have jurisdiction to entertain "any other claim or action (if any) arising under or relating to this Agreement (whether or not such claim or action is validly asserted in light of Section 10 above)." Id. Read in context, this additional language does not give the Court authority to decide arbitrability questions. At most, it gives Chicago, Illinois state and federal courts authority to resolve claims when the parties waive or forfeit their rights to arbitrate. Indeed, Section 11(k) expressly states that "nothing in this Section 11(k) waives or limits in any way a party's arbitration . . . obligations under Section 10." Id.

Accordingly, the Court holds that the parties clearly and unmistakably delegated questions of arbitrability to an arbitrator.

### 2. Unconscionability

Next, the Court must assess whether a general contract principle (here, the principle against enforcing unconscionable agreements) makes the delegation clause unenforceable under the FAA. See Rent-A-Center, 561 U.S. at 71–74.

Courts may refuse to enforce an unconscionable contract or a specific clause within a contract, or they may limit the application of any unconscionable clause. Cal. Civ. Code § 1670.5(a). "California's 'unconscionability standard is, as it must be, the same for arbitration agreements and nonarbitration agreements.'" Poublon v. C.H. Robinson Co., 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting Sanchez v. Valencia Holding Col, LLC, 61 Cal. 4th 899, 912 (2015)).

9

1    "[T]he party opposing arbitration bears the burden of proving . . . unconscionability." Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012).  That party "must demonstrate that the contract as a whole or a specific clause in the contract is both procedurally and substantively unconscionable." Poublon, 846 F.3d at 1260.  Procedural unconscionability and substantive unconscionability "need not be present in the same degree." Id. (quoting Sanchez, 61 Cal. 4th at 910).  Instead, "there is a sliding scale." Id.  "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice-versa." Sanchez, 61 Cal. 4th at 910.

Norris and Yuan argue that the delegation clause is procedurally unconscionable because "it was presented on a take-it-or-leave-it basis, as neither Norris nor Yuan were afforded any opportunity to negotiate over it," and substantively unconscionable because it "requires the arbitrator to apply Illinois law rather than California law to determine its enforceability." Opp. to Mot. to Compel at 5. These arguments fail.

### a.  Procedural Unconscionability

"The procedural element of unconscionability focuses on 'oppression or surprise due to unequal bargaining power.'" Id. (quoting Pinnacle, 55 Cal. 4th at 246).  Contracts of adhesion—i.e., contracts "imposed and drafted by the party of superior bargaining strength, relegat[ing] to the subscribing party only the opportunity to adhere to the contract or reject it"—may give rise to oppression, but are not "per se unconscionable." Id. at 1261–62.  For example, a "non-negotiable employment agreement" that is a "condition of employment . . . will be enforceable unless the degree of substantive unconscionability is high," unless there are additional indications of "oppression or surprise." Id. at 1262 (citations omitted).

Here, the delegation agreement is—at most—minimally procedurally unconscionable.  As explained above, Norris and Yuan have abandoned any argument that the delegation agreement was a condition of employment.  See supra note 1; Part I.B.  But

United States District Court
Northern District of California

1  even if the delegation agreement were a condition of employment, its "adhesive nature . . .
2  without more, would give rise to a low degree of procedural unconscionability at most."
3  Poublon, 846 F.3d at 1261–62.  And Norris and Yuan raise no other "indications of
4  oppression or surprise."  Id. at 1262.  They do not, for example, contend that they were
5  "unsophisticated layperson[s] who could not have understood the delegation agreement."
6  Pinela v. Neiman Marcus Grp., 238 Cal. App. 4th 227, 243 (2015).  Thus, at most, there is
7  only "the minimum degree of procedural unconscionability that is always present with an
8  adhesive contract."  Id. at 244.  And because "the degree of procedural unconscionability
9  . . . is low. . . the agreement will be enforceable unless the degree of substantive
10 unconscionability is high."  Poublon, 846 F.3d at 1263 (citation omitted).

### a. Substantive Unconscionability

12  The substantive unconscionability analysis focuses on the "terms of the agreement
13 and whether those terms are so one-sided as to shock the conscience."  Kinney v. United
14 Healthcare Servs., Inc., 70 Cal. App. 4th 1322, 1330 (1999).  "When the weaker party to
15 an adhesion contract can show the contract is unconscionable under California law, a
16 contractual provision requiring the application of a different state's law to enforce the
17 contract is itself unenforceable."  Pinela, 238 Cal. App. 4th at 246–47.

18  Norris and Yuan argue that the delegation clause is substantively unconscionably
19 because "it requires the arbitrator to apply Illinois law rather than California law to
20 determine its enforceability."  See Opp. to Mot. to Compel at 5; 2015 RSU at 10; 2020
21 RSU at 10.

22  This argument fails for several reasons.  First, the delegation clause is an
23 independent agreement to have an arbitrator decide gateway arbitrability issues, separate
24 from the relevant choice-of-law provisions.  Therefore, those choice-of-law provisions are
25 not grounds for invalidating the delegation clause.  See Rent-A-Center, 561 U.S. at 70.
26 Second, the mere application of Illinois law is not enough to show substantive
27 unconscionability, let alone a high degree of substantive unconscionability.  See Poublon,
28 846 F.3d at 1263.  Norris and Yuan have not shown or argued that the delegation

11

agreement would be unconscionable under California law, such that application of Illinois law is itself unconscionable. See Pinela, 238 Cal. App. 4th at 246–47. Instead, they argue that any agreement that would require the arbitrator to apply Illinois law instead of California law to determine enforceability is invalid. See Opp. to Mot. to Compel at 5. Because a delegation clause may be invalidated only "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, Norris and Yuan's argument assumes without support that in California, choice-of-law provisions applying Illinois law are invalid. Third, any illegal or unenforceable term in the delegation agreement "shall be modified or deleted" by the arbitrator under Section 11(j). 2015 RSU at 10; 2020 RSU at 10. Thus, the arbitrator may conclude that it would be improper to apply Illinois law. That distinguishes this delegation agreement from the one at issue in Pinela, which specifically deprived the arbitrator of similar authority. See 238 Cal. App. 4th at 246.

Thus, the delegation agreement is (at most) minimally procedurally unconscionable and is not substantively unconscionable. Under the "sliding scale" approach, see Poublon, 846 F.3d at 1260, it is valid and enforceable. And because the parties must resolve their dispute in arbitration, the Court denies Norris and Yuan's motion for a preliminary injunction.

IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to compel arbitration and stays the case pending arbitration proceedings. See 9 U.S.C. § 3. The Court denies Norris and Yuan's motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated: April 2, 2021

_____
CHARLES R. BREYER
United States District Judge